Montoya v. Amtrak is next for argument. Yes, may it please the court. Good morning, Yara Montoya here for Amtrak and I'd like to reserve two minutes for rebuttal if possible. Amtrak is here to respectfully request that this court reverse the district court's denial of its motion to compel arbitration. I would like to begin with a jurisdictional question. I actually have two jurisdictional questions, but one of them is perfectly straightforward. You're relying on Section 16 of the Federal Arbitration Act as a source of jurisdiction. I wonder whether the Federal Arbitration Act applies at all to this case, given the exemption for railroad workers in Section 1 of the Act, which your brief doesn't even mention. How do we have jurisdiction under an act that apparently does not apply? Judge Easterbrook, you raise a great point that I would be happy to further brief. No, this is something you needed to have briefed earlier. Jurisdictional analysis is essential in every case, right? You're relying on part of the Federal Arbitration Act. And I'm asking how you can do that, given its apparent inapplicability. And I apologize, I don't have the cases in front of me. How can Amtrak not recognize that its employees are railroad workers, and therefore exempt from this statute? This is not something that should come as a surprise to Amtrak and its lawyers. Yeah, and again, I apologize, I'm not able to fully answer your question on the jurisdictional issue. If I may return to the evidence on the record. Does Amtrak just have its head in the sand? I don't understand how this is possible. Amtrak is running a railroad. Yes. There's a statute that excludes railroad workers from the FAA. What more do we need? Yes. And again, I apologize that I'm not prepared to answer that jurisdictional question today. All right. If I may return to the lower court's ruling that held, quote, it is likely that Ms. Montoya was aware of the arbitration agreement, that she did agree to it, and that the motion should ordinarily be granted. But ultimately, the district court decided to deny the motion and compel for reasons that did not dispute the evidence presented before it. Under Illinois contract law, Amtrak was required to demonstrate and offer acceptance and consideration, and we did so by providing evidence of two separate and distinct times during which Ms. Montoya, the plaintiff here, entered into a binding arbitration agreement. Amtrak's motion to compel should have been granted on either basis. The first instance of an arbitration agreement was on June 1, 2018, when Ms. Montoya agreed to arbitrate any covered claims. No. You're relying on an April communication, correct? Yes. Correct. And part of the problem here is the date disconnect. Yes. That at least is something that the district judge focused on. Correct. Yes. Just to provide some context for your statement or your question, on April 23rd, Amtrak did email its management employees, including Ms. Montoya, a special employee advisory titled Mutual and Binding Arbitration, Management Employees, and Independent Contractors. Attached to that advisory, there was a copy of the arbitration agreement becoming effective June 1, 2018. But not attached to the copy that you submitted with your motion, correct? Initially, yes. We did eventually provide it with a supplemental affidavit. I can't restrain myself from commenting how unusual this is for an employer to struggle so much to come forward with proof of a claimed contract for arbitration. Yes. Understood. Unfortunately, when the advisory was retrieved from archived records, the actual underlying arbitration agreement was not retrieved with it. However, upon instruction from Judge Pallmeyer in the lower court, we did, in fact, retrieve the agreement that is referenced twice in the advisory. And it's referenced above that it is attached and provided via hyperlink to its employees. Specifically, on that point, I think it's critical to show that Ms. Montoya has never denied receiving the advisory and has never denied that the advisory did, in fact, provide her with a copy of the arbitration agreement. Did the email that she got say this was going to be mandatory? The email itself did not expressly say mandatory. Did it say she would be waiving jury rights? Not in those expressed terms, no. Did it say that her continued work would function as acceptance of the agreement in the email? The advisory, no. Why not? Those seem like fairly critical points. And the email just seems kind of like we're trying to put honey all over this agreement without putting employees on notice that you really need to read this carefully because you're going to give up some important rights. We are going to require you to give up these important rights if you want to keep your job. Well, the advisory did conclude on the second page by, quote, urging, end quote, its management employees to review the entirety of the arbitration agreement. And on page one of the arbitration agreement, there was language expressly stating that she had continued employment with Amtrak Constituted Acceptance. You know, I'm not aware of any court that has directed. In your reply brief, counsel, you all rely on paragraph 12 of the proposed agreement, at least the version that was submitted here, which you seem to be saying that whether this is arbitrable and whether the contract was formed would be up to the arbitrator. Right? One second. I apologize. It's essay 16. Yes. And I guess I put aside the question that it's raised for the first time in reply. I thought questions about the formation of the agreement were pretty conclusively left to the courts under Supreme Court precedent, right? Yes. So what's your point? About paragraph 12. The point on paragraph 12 is that if any dispute as to the actual validity of the agreement itself, that would be heard by the arbitrator. But any issue on formation would be required to have a section four trial on formation. Right. So paragraph 12 is not, it actually misstates the law. It's unenforceable itself, in part. Right? I believe that's what you just told me. And did you ever ask for a section four trial? I don't believe our brief did, in fact, in the lower court, but the plaintiff's brief did, in fact, ask for a trial on formation. So we should reverse and order something you never asked for because the district judge didn't give you what you didn't ask for? Well, our requested relief is full reversal because we do not believe that there is any issue on formation. In our view, an issue on formation would have been if Ms. Montoya had claimed, I never agreed or that's not my signature, which is not the case here. If arbitration were ordered here, counsel, would there be any issue about the timeliness of plaintiff's demand or claims as a result of the sidetrack here through court? No, that has never been raised by Amtrak. And you would not assert it? Without speaking for litigation, I don't believe so, no. You're speaking for Amtrak. I want to make sure that if we agree with you, we're not sending the plaintiff into a blind alley. No, Your Honor. I don't want to characterize our position in that way that we would have any argument regarding the timeliness of an arbitration. I'll take that as a no. Yes. Counsel, I'm concerned about inefficiencies here. Judge Easterbrook has already raised the jurisdictional point, which I think might be dispositive in my view. But also, Judge Pallmeyer specifically said, come back to me if you want a hearing. So even though you didn't ask, she gave you that out. Instead, you come and file a notice of appeal on an appeal that we may not have jurisdiction to hear. Why didn't you take Judge Pallmeyer up on her offer? We didn't understand Judge Pallmeyer's offer to mean a hearing on formation. We believed her to have indicated that she would not be granting the motion, period, and redirected the parties to either discuss settlement or continue in the litigation before her in federal court. In sum, for brevity's sake, I would like to point out the fact that Ms. Montoya never denied receiving the advisory, never denied that the advisory contained a copy of the executing the 2019 certificate, but did include a representation. Thank you, counsel. Thank you. Ms. Major. Good morning. May it please the court. Your brief says there is appellate jurisdiction for two reasons. One is that there's a final decision in the district court, appealable under Section 1291. Is that conceivable? This case appears to be still pending in the district court. Yeah, you, I may be wrong on that. So, that's, whatever that is, you're not standing by it. I'm not. All right. And the second reason is Section 16. So, I have for you the same question I had for your adversary, which is, how do we get to Section 16 in light of 9 U.S.C. Section 1? I am, Your Honor, embarrassed to say that I did not, I do not represent railroad workers very often, and it is a lesson learned, and that is for sure. It would be a good idea to read the statute that everybody is talking about.  I have read it, but I need to read it again. I have read it in the past, but I do need to read it again, and I appreciate the court's careful attention to that issue. Well, it's obvious we're going to need supplemental briefs. Okay. No one has given this subject the time it needs. Okay. Please continue.  Well, the questions raised by the panel, I think, address many of the issues that I would be addressing right now or bringing up right now. One fact that I think is also very important to note here, and I'll start with the Special Employee Advisory, and I think that the case here is even stronger for finding that this is not an enforceable contract than it was in Campbell, the first district decision that this court addressed in the Gupta decision. In the Special Employee Advisory, the advisory lays out what it says are the core elements of the program, and among these core elements, it never mentions that continued employment is acceptance of this program. And it never mentions that it's mandatory. It never mentions that you're waiving your right to a jury trial. So, this is even more problematic than Campbell because it actually misrepresents what the core elements are and what the important information is. Well, it's burying the lead in a way that I would not have expected Amtrak to behave toward its employees. Nevertheless, if plaintiff got the April advisory with the attachment of the agreement attached dated June 1, that sure looks like a valid arbitration agreement and one that's actually relatively fair and relatively detailed compared to other ones we see. Well, I think if you look at, I think Gupta and Campbell, if you look at those decisions, they both focus on what was communicated in the email to the employees in order to put them on notice that this contract, what this contract was going to do and how this contract would be accepted. The language that this agreement is accepted by continued employment is on the very last page of a 10-page single-space contract for these employees. My client is a very sharp woman in her position, but she's not a lawyer. She's not a sophisticated business person.  Lawyers won't read these agreements either. Probably true. One of the professors at the University of Chicago has published a book in which he calculates that if you were to read all of the agreements that are tendered to you in the course of a year, it would take you two years. Oh, jeez. I believe that. It's absolutely true, Your Honor. But it doesn't mean you can ignore their consequences. Right. Well, I think that the restatement on contracts, the second restatement on contracts says acceptance by silence is the exceptional case. And employers have a duty, you know, they're sending emails all day long every day about all kinds of things. They do have a duty to be very clear in their communications when what's going to happen is an employee is going to waive their constitutional rights to a jury trial. And I think as Judge Hamilton noted, there was a lot of honey on this advisory. It was not very clear to an employee the significance or the consequences of this agreement or that the agreement was going to be accepted just by having looked at this email. Well, those things are, in fact, spelled out in the document. And so what, Ms. Major, if we get to the merits here and if we assume that the plaintiff got the April email with the agreement, assume that much, what would there be a factual dispute about that would be worth trying under Section 4? In this case? Yes. Well, you know, there's three events that they focus on, okay? My client cannot say she did not get this email. She does not deny that she did not get it. Look, November 2019 is a factual mess. It is. I have a lot of sympathy for Judge Palmire's evaluation of that. Yes. But we still have the April 2018 advisory and the agreement. Yes. So beyond that, my client, she just testified there was no contract in the compliance certificate. That's 2019. Let's focus on 2018. Well, I think 2018 comes down to, you know, there's been a lot of missteps in terms of providing evidence that this was attached. In fact, they first represented to the court. We know. It was a mess. A lot of people's time had been wasted by the way this was presented to the district court. Right. But here we are. Okay. So if your client got that email with the attachment, what is there to try? There is nothing to try, Your Honor, because the whole argument as to whether or not this is enforceable rests on the language in the advisory and an interpretation of the Gupta and the Campbell decisions, which I believe make it very clear that the email has to put the employees on notice of these important aspects that the panel has raised already in questioning counsel for the appellant. So there are no fact issues. And I do believe that's why the court did not have a hearing, because based on the facts that were before the court, the court determined that no reasonable fact finder, and she was the fact finder here, no reasonable fact finder could find that this email provided sufficient notice of the effects of this arbitration agreement that was attached. So we think that this is below the Campbell case and that this is an important issue because people are giving up their rights to jury trial. They're giving up their rights to the protections. I'd have an arbitration right now at Jams where you get three depositions. I mean, there's big differences, and especially in employment where it's very fact-driven. So employers have to be straightforward, and they have to make sure that employees understand in the emails and not sort of a bait-and-switch sort of a thing where the email misleads the employee in one direction and the agreement that's attached says something that is very different than what's in the email that is used to send it to the employees. And it was sent once here, only once, and they did nothing to follow up. They didn't put in any place any monitoring to make sure people opened it. They didn't ask people to sign any kind of confirmation or waiver or something that would have made sure that they knew that people had seen it. There was absolutely nothing. So I appreciate your time. If there's no more questions, that's all. Thank you. Thank you, counsel. Thank you. The court directs the parties to file supplemental jurisdictional memoranda in this case. They are due within seven days, and they have to address two questions. The first is whether Section 16, whether 9 U.S.C. 16, applies at all in light of the exemption in 9 U.S.C. Section 1 and the Supreme Court's holding in Bissonette against LaPage Bakeries, 601 U.S. 246. The second question is whether the district court has denied a request for arbitration or has simply deferred decision pending further factual development.  Memos addressed to those two questions are due within a week, and when they are received, the case will be taken under advisement. Thank you very much, counsel. Thank you.